90 So.2d 65

**CHARLES TOLMAS, Inc.**

v.

**POLICE JURY OF THE PARISH OF JEFFERSON.**

No. 42255.

June 29, 1956.

Rehearing Denied Sept. 28, 1956.

McCaleb and Simon, JJ., dissented.

Gerson Z. Tolmas and A. P. Schiro, III, New Orleans, for appellant.

Frank H. Langridge, Dist. Atty., Gretna, for appellee.

PONDER, Justice.

This is a suit to set aside an expropriation by the Police Jury of the Parish of Jefferson of plaintiff's property for a proposed road under the provisions of section 3369 et seq. of the Revised Statutes of Louisiana of 1870, LSA–R.S. 48:492 et seq., and for damages in the sum of $4,526.49 sustained by the plaintiff as a result of the taking; in the alternative plaintiff asks that the amount of $2,000 awarded for the property by the Police Jury be increased to $15,000. From a judgment denying plaintiff's demands as to the setting aside of the expropriation but allowing special damages in the amount of $1,625, the plaintiff has prosecuted this appeal.

On February 16, 1940, the plaintiff-appellant herein purchased a triangular portion of ground fronting Metairie Road in the Parish of Jefferson having a frontage of 204 feet front on Metairie Road, 193 feet, 1 inch front on 42nd Street, and 65 feet 11 inches on the third side of the triangle. During the summer of 1945 plaintiff corporation (Charles Tolmas, Inc.) decided to develop its property by constructing thereon certain commercial stores and in pursuance thereof had drawn certain plans and specifications. In the latter part of October 1945 appellant began the actual construction by removing the stumps, grading the property and digging trenches to lay foundations necessary for the said build. On December 3, 1945 the Police Jury adopted Ordinance No. 904 under the provisions of Section 3369 et seq. of the Revised Statutes of Louisiana of 1870 authorizing a jury of freeholders to trace and lay out a road or roads at the dead-end of 42nd Street, Bonnabel Place, so as to connect same with Metairie Road and to further lay out an additional road to widen 42nd Street from the point of the triangle known as Square 105, to Metaire Road. On Tuesday, January 22, 1946, at midnight, the appellant received a letter from the defendant signed by Mr. Errol E. Buckner stating that the Jury of Freeholders would meet on the site of the property on Thursday, January 24, 1946, at 3:30 p. m. "to determine the amount of land to be acquired by the Parish to enable it to re-direct 42nd Street." This letter further read: "Inasmuch as this project is expected to require *some* of the ground you own between 42nd Street and Metairie Road, you are advised that there will be a meeting * * *." On the morning of Wednesday, January 23, 1946, by special delivery mail, appellant replied to Mr. Buckner advising him of receipt of the letter of January 22nd, and stating that his (appellant's) attorney, Mr. Louis Yar-

rut, was out of town and would return on Monday and asked postponement of the meeting of the Jury of Freeholders until that time. No reply was received by the appellant. On Thursday, January 24, 1946, the Jury of Freeholders met and approved a road as laid out by the Parish Engineer and placed a value thereon in the sum of $2,000. On Friday, January 25, 1946, the next day, the Police Jury met, without any notice being given to appellant, and adopted Ordinance No. 908 which approved and adopted the recommendations of the Jury of Freeholders expropriating all of plaintiff's property. On the evening of Monday, January 28, 1946, at 8 o'clock, the appellant Charles Tolmas, president of plaintiff corporation, received an anonymous phone call telling him that the trenches that were dug on his property preparatory to pouring the concrete for the foundation which was scheduled to take place on the morning of January 29th, were filled in. Mr. Tolmas testified that he supposed vandals had done this damage and he had his son, an attorney, phone the sheriff and report the damage. On Tuesday, January 29, 1946, Mr. Tolmas received a phone call from his electrician telling him that the construction work on this ground was being levelled by two bulldozers and several tractors. Immediately Mr. C. Tolmas went to the scene with his wife and two sons and found that a deputy sheriff, who ordered him off of the property at gun-point, was supervising the demolition and levelling of the construction on orders of the Police Jury. At the time this occurred, there was a warehouse and toolhouse constructed on the property, the steel reinforcing rods were in place ready for the foundation to be laid, 43,000 bricks were on the lot for the construction with wheelbarrows and tools and the forms were all in place ready for the pouring of the concrete that morning. The ground was completely levelled by the bulldozers and tractors and the tools and construction were ploughed under. The only publication of the adoption of Ordinances No. 904 and 908 appeared in the Jefferson Democrat on February 9, 1946, some eleven days after the physical taking of the property. On February 15, 1946 the Police Jury sent through the regular mails a letter addressed to the appellant informing it of the taking and enclosed a check for $2,000. This check was promptly returned by the plaintiff-appellant and suit was filed to set aside the expropriation on March 1, 1946.

We are not impressed with the manner in which the Police Jury sought to expropriate this property and the speed and haste in which it was accomplished. It must be emphasized that the first and only notice given to appellant was on Tuesday, January 22, 1946, at midnight and this notice stated that a portion of the ground was sought to be expropriated and a meeting of the Jury of Freeholders would be held on

Thursday, January 24, 1946, at 3:30 p. m. The Police Jury met, without notice to the appellant on Friday, January 25th and resolved by Ordinance 908 to take all of the property owned by appellant by expropriation. Without notice to the appellant, this body dispatched bulldozers and tractors to the property on January 28th and 29th to demolish the construction that had already been begun. Appellant contends that the taking was illegal and unconstitutional because he was not timely notified of the meeting of the Police Jury as well as the meeting of the Jury of Freeholders.

■ It is to be noted that in Revised Statutes, § 3369 et seq. no provision is made for notice to the landowner and opportunity to appear before the jury of freeholders concerning the laying out of a road. In the case of Police Jury of St. Martin Parish v. Kidder, 4 La.App. 296, it was held in regard to these sections of the Revised Statutes that the law on the subject intends that the owner must have timely notice since the Constitution in Article 1, Sections 2 and 6—LSA guarantees this procedure. Although in the Kidder case the landowner received no notice whatsoever, the opinion points out that under the law not only must he be furnished notice of the meeting of the jury of freeholders but notice also of the meeting of the police jury for the reasons as stated by the court: "these sections of the Revised Statutes contemplate notice to the owner and opportunity for him to appear before the jury of freeholders concerning the course of the road and the damage to be paid on account of the same, before the right-of-way can be taken for the road. And as the police jury has power under the law to revise, correct or change the recommendations of the jury of freeholders, as to the course of the road, also as to the amount of damages which should be allowed on said account, the owner must have notice and opportunity to also appear before them at the time the report of the jury of freeholders is being considered and before acting thereon." This pronouncement is logical and sound for it may well be that the recommendations of the jury of freeholders would be altered, changed, or entirely rejected. The Constitution, Articles 1, Sections 2 and 6 assures that the essential elements of due process of law are notice and an opportunity to be heard. It is basic law that the essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. 12 Am.Jur., Constitutional Law, sec. 573, pp. 267, 268; Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162. The following language found in Dupuy v. Tedora, 204 La. 560, 573, 15 So.2d 886, 890, is pertinent herein, viz.:

"The 'due process of law' provision in the Constitution is designed to ex-

clude oppression and arbitrary power from every branch of the government.

' "Due process of law" in judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the conduct and enforcement of private rights.' See Due Process of Law, in 13 Words & Phrases, Perm. Ed., p. 584. It means that no person shall be deprived of life, liberty, property, or of any right granted him by statute, unless the matter involved shall first have been adjudicated against him upon trial conducted according to established rules regulating judicial proceedings. It forbids condemnation without a hearing."

The appellee contends that the notice of January 22, 1946 was sufficient. In this we cannot agree. The testimony in the record shows that some members of the jury testified that they were under the impression that the letter of January 23, 1946, written by Mr. Charles Tolmas to Mr. Buckner asking for a postponement, was answered and had they known that it was not answered they may not have proceeded in such haste. Mr. Holtgreve was not called to testify although it is alleged that he had several conversations with Mr. Tolmas. Mr. Buckner likewise was not called to testify and although defendant's counsel

stated in argument that every effort was made to locate him this seems highly improbable in view of the fact that this case was in litigation and set for trial on many occasions over a period of ten years. Mr. Charles Tolmas denied receiving any other notice or communication whatsoever and neither Mr. Holtgreve nor Mr. Buckner, whom the jurors testified they instructed to answer Mr. Tolmas, were produced as witnesses to rebut this damaging testimony. It is worthy of note that in the case of Police Jury of Parish of St. James v. Borne, 198 La. 959, 5 So.2d 301 (although the decision is not in point herewith) that two notices were given the landowner, one to attend the meeting of the Jury of Freeholders, and one to appear before the meeting of the Police Jury. We think this in line with the intendment of the law.

Another reason advanced by appellant that the taking is unconstitutional, null and void, and of equal importance as the lack of notice, is the allegation that there was no payment prior to the taking in plain violation of Article 1, Section 2 of the Constitution of 1921. This section of the Constitution provides: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and *after just and adequate compensation is paid.*" (Italics mine.) Article 2629 of the LSA–Civil

Code also provides: "This price ought to be paid to the owner *before* the expropriation, that is to say, before he has delivered the possession, or it has been finally taken from him, in case of resistance." Article 2634 of the LSA–Civil Code provides that the value of the property shall be deposited with the sheriff, before the property can be taken.

In the case of Bickham v. City of Shreveport, 156 La. 648, 651, 101 So. 8, 9, cited and relied upon by appellant, this Court stated:

> "The fact that the city has the right to *expropriate* the property, or that property which might have been expropriated cannot be recovered if once taken (the owner being then restricted to a claim for its value), does *not legalize* such a *taking* thereof against the will of the owner. Under the Constitution of this state property expropriated must be paid for *in advance* of the taking. Const.1921, art. 1, § 2; Const.1898, art. 167. The taking of property for levee purposes is the only exception to this rule. Const.1921, art. 16, § 6, p. 115."

This same ruling was reiterated in De Bouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914. In State ex rel. Cotting v. Sommerville, 104 La. 74, 28 So. 977, 982, relying on the provisions of Article 167 of the Constitution of 1898, this Court

declared, "that 'private property shall not be *taken or damaged* for public purposes without just and adequate compensation being *first paid.*' * * * A court is bound to assume that the deprivation of a right secured to a person by constitutional guaranty works him per se an irreparable injury." Many years ago in the case of Police Jury of Jefferson v. D'Hemecourt, 7 Rob. 509 it was held by this Court that Arts. 489, 2604–2611 of the Civil Code prescribing the mode of expropriation, and forbidding it without indemnity to the owner, have a constitutional sanction, and cannot be violated by parochial or state legislation.

█ The record herein shows that the Police Jury on January 25, 1946 met and adopted an ordinance to expropriate this property and set the damages at $2,000. On January 28th and January 29, 1946 the Police Jury took actual, physical possession with resistance from the owner, appellant herein. No payment was made until February 15, 1946 when a check was sent through the regular mails to appellant, which was promptly returned. It must, therefore, be concluded that the constitutional provision set out in Article 1, Section 2 of the Constitution of 1921 has not been complied with and the taking is therefore illegal, null and void and must be set aside.

█ It is the settled rule of this Court that proceedings for the expropriation of

private property for public use are in derogation of common rights and all the formalities prescribed by law must be strictly observed. Mayor, etc., of City of Jefferson v. Delachaise, 22 La.Ann. 26; Calcasieu & S. Ry. Co. v. Witte, 224 La. 1091, 71 So. 2d 854.

After reading the record in this case it does not appear that there was any necessity for the taking or that the property has ever been used for the purpose for which it was supposedly taken. However, it is not necessary to pass on this point in view of our conclusions set forth above.

For the reasons assigned, the judgment of the lower court is reversed and set aside; the expropriation proceedings are annulled and set aside and the plaintiff, Charles Tolmas, Inc., is decreed to be the owner of the following described property: A certain triangular portion of ground situated in the Parish of Jefferson, State of Louisiana, being the Northwest corner of original Square No. 105 in the Town of Bath, which said triangular piece or portion of ground measures 204' front on Metairie Road, 193'1" front on Street coming to a point on one side with Metairie Road and 65'11" on the other side line dividing it partly from property now or formerly of R. C. Lawes, the whole as per sketch of survey made by C. A. Roberts, Civil Engineer and Surveyor, dated November 12, 1923, a blue print of which is annexed to an act passed before

Bus Rouen, Notary Public, dated December 20, 1923. All legal costs to be paid by the defendant.

McCALEB, J., dissents and will assign written reasons.

SIMON, J., dissents.

FOURNET, C. J., absent.

McCALEB, Justice (dissenting).

I think the trial judge correctly concluded that this case is controlled by Fuselier v. Police Jury of Parish of Iberia, 109 La. 551, 33 So. 597, 599. There, as here, the police jury, proceeding under Sections 3368 and 3369 of the Revised Statutes of 1870 (now R.S. 48:491–493), appointed a jury of freeholders to lay out a parish public road and assessed as damages $35 per acre to the owners of the land over which it passed. This action was approved by the police jury and it ordered the appropriation of the land over which the road was to pass, directing payment of the damages to the owners. The plaintiff resisted the taking and proposed occupation of her land for road purposes and brought suit for annulment of the appropriation proceeding, and for an injunction restraining the police jury in the premises. Upon denial of the relief sought in the district court and the Court of Appeal, the case reached this Court on certiorari. In affirming the rulings of the

courts below, this Court found that Sections 3368 and 3369 of the Revised·Statutes of 1870 authorized the *appropriation* of such lands as reasonably necessary for the laying out of public parish roads upon the payment to landowners of the damages to be assessed by a jury of freeholders and that the sections were not in conflict with Articles 2626 through 2641 of the Civil Code which deal with the *expropriation* of property by public bodies and certain corporations impressed with the public interest. In resolving thus, the opinion pointed out that, in the appropriation of lands needed for a parish road, the police jury acquires only the use of the soil for the public purpose or a mere servitude, as distinguished from a taking by expropriation, which vests an indefeasible title or estate in the public body exercising the right. It was observed:

> "In the one case, where complete expropriation is had under the articles of the Code, it would seem that the fee, itself, of the land, so far as the purpose for which it is wanted is concerned, is taken, while in the other, to wit:—the laying out of a public road under Rev. St. § 3369, the fee remains altogether in the owner of the soil. Civ.Code, art. 658; Bradley v. Pharr, 45 La.Ann. 426, 12 So. 618, 19 L.R.A. 647."

1. Cross v. Police Jury, 7 Rob. 121; Fusilier v. Police Jury, 6 La.Ann. 670; Police Jury of Jefferson v. D'Hemecourt,

In addition, the Fuselier opinion fully answers the questions raised by plaintiff in this case anent the constitutionality of Sections 3368 and 3369 of the Revised Statutes of 1870. It states:

> "The owner, over whose lands a public road is ordered laid pursuant to the authority of Rev.St. § 3369, has no just cause of complaint on the score of the ex parte character of the proceedings. He may have 'his day in court.' He is not bound irrevocably by the action of the police jury, nor by that of the jury of freeholders appointed to lay out the road and assess the damages. Section 3370, Rev.St. (now R.S. 48:494), gives him the right to go into court and contest the action taken, and jurisprudence has recognized and vindicated this right. See authorities hereinbefore cited."[1] (Words in parenthesis mine).

The Fuselier case has been cited with approval by this Court on numerous occasions and the correctness of the decision has been upheld despite vigorous attack. See Police Jury of Evangeline Parish v. Thibodeaux, 158 La. 573, 104 So. 372 and dissent of O'Niell, C. J., therein. The importance of the Fuselier decision to the case at bar cannot be gainsaid. Since it holds that a taking under Sections 3368 and

7 Rob. 509; Zenor v. Parish of Concordia, 7 La.Ann. 150.

3369 is a legislative appropriation and not a judicial expropriation (see 18 Am.Jur. verbum "Eminent Domain", sections 310 and 311), it exposes the error of the Court of Appeal's opinion in Police Jury of St. Martin v. Kidder, 4 La.App. 296 (heavily relied on by the majority), to the effect that notice to the landowner of the proceedings (both of the jury of freeholders and the police jury) is essential in order to render the statute constitutional. Obviously, the Kidder case would rewrite the statute, as it neither provides for nor requires the service of notice or citation.

But, even so, this case is clearly distinguishable from the Kidder case in that, there, no notice at all was given of any of the proceedings whereas, here, plaintiff admittedly received written notice from the jury of freeholders that his property was to be taken. The contention that the notice of the meeting of the jury of freeholders was too short in point of time to be effective does not impress me and the majority's resolution that plaintiff should have had another notice from the police jury, prior to its consideration of the action of the jury of freeholders, finds no support in law, being borrowed from dictum to that effect in the Kidder case. Certainly, no requirement for this latter notice is to be found in the statute. Indeed, it is not seen that any further action of the police jury is contemplated after it has appointed the jury of freeholders.

The majority also hold that the appropriation of plaintiff's property was null and void for the reason that it was violently taken prior to payment therefor in contravention of Section 2 of Article 1 of our Constitution. Conceding that the police jury acted prematurely in taking possession of the land on January 28, 1946, I think it clear that its possession was illegal only during that period of time when the constitutional mandate for prepayment of compensation had not been met—that is, prior to February 15, when plaintiff was tendered the amount assessed as damages by the jury of freeholders. See Ouachita Parish School Board v. Clark, 197 La. 131, 1 So.2d 54, where the court held that the fact that property was illegally appropriated by a public body does not operate as a bar to subsequent expropriation proceedings. See also Carrollton R. Co. v. Avart, 9 La. 205; Gay v. New Orleans Pacific Ry. Co., 32 La. Ann. 277 and New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921.

The majority holding seems to be that failure to pay compensation in advance of the taking was fatal to the proceedings and that subsequent compliance by a tender of payment cannot restore their legality. But the cases relied on do not sustain the ruling.

Bickham v. City of Shreveport, 156 La. 648, 101 So. 8, stands for the proposition that the right to expropriate does not legal-

ize the taking of property without payment in advance therefor. It does not stand for the proposition that such taking may not become lawful upon subsequent expropriation proceedings and payment of just compensation.

In De Bouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914, the Court properly held unconstitutional, null and void a statute authorizing the highway commission to take possession of property before expropriation and payment, in the event the owner and the commission should not agree upon the price thereof, since such legislation authorized action in direct contravention of a constitutional provision.

And State ex rel. Cotting v. Sommerville, 104 La. 74, 28 So. 977, merely granted to relator, whose property had been appropriated by two railroad companies, the right to appeal suspensively from an order of the district court dissolving an injunction on bond enjoining the railroad companies from taking possession of relator's property without expropriation proceedings and payment of compensation. In other words, the court simply recognized the right of a private citizen to enjoin an unlawful appropriation of his property.

But where, as in the instant case, all the legal requirements for appropriation have been met, I cannot accede to an invalidation of the entire proceedings merely because possession was taken prematurely and illegally.

Since it is my view that the proceedings were conducted in conformity with Sections 3368 and 3369 of the Revised Statutes of 1870, it would seem to follow that plaintiff is entitled, in addition to the damages assessed by the jury of freeholders, to such damages it has sustained as a result of the violent taking of his premises on January 28, 1946. However, by reversing the judgment of the district court in its entirety, it is evident that the majority feel (although it is not stated in the opinion) that, since the taking was illegal and tortious, no liability may be imposed upon the police jury as it is not responsible for the offenses of its agents and employees while they are engaged in the performance of governmental functions. In thus concluding, the majority have apparently overlooked the fact that the police jury neither appealed nor answered the appeal taken by plaintiff. Consequently, this Court is without jurisdiction to alter, against plaintiff's interest, the judgment in its favor for $1,625 granted by the district judge.

For the foregoing reasons, I respectfully dissent.

### On Motion to Correct the Decree.

PER CURIAM.

In our original decree we reversed and set aside the judgment of the District Court,

declared the attempted expropriation proceedings null and void, and held plaintiff to be the owner of the property in dispute.

In a motion to correct the decree, the plaintiff has called our attention to the fact that our decree is silent as to that part of the District Court's judgment which awarded plaintiff damages in the sum of $1,625, and that defendant has neither appealed from the judgment nor answered the appeal. Plaintiff asks that our decree be amended by a per curiam so as to affirm the money judgment, or, in the alternative, that we grant a rehearing in order to consider awarding the full amount of damages claimed by plaintiff.

As the defendant has neither appealed nor answered the appeal, we are without authority to disturb that part of the judgment which awarded plaintiff damages in the sum of $1,625. Code of Practice, Articles 592 and 888; Nurdin v. Bounanchaud, 152 La. 853, 94 So. 420; Schwandt v. Nunez, La.App., 71 So.2d 583; Freeman v. World Ins. Co., La.App., 61 So.2d 892.

Our decree is accordingly amended so as to add thereto an additional decree affirming that part of the judgment of the District Court which awards plaintiff damages in the sum of $1,625. The alternative application for rehearing is denied.